UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **AMERICAN WILD HORSE CAMPAIGN**, <br><br> Plaintiff, <br><br> v. <br><br> **UNITED STATES BUREAU OF LAND MANAGEMENT**, <br><br> Defendant. | Case No. 22-cv-3061 (CRC) |

### MEMORANDUM OPINION AND ORDER

Plaintiff American Wild Horse Campaign ("AWHC") submitted a Freedom of Information Act ("FOIA") request to the United States Bureau of Land Management seeking information about its handling of an AWHC report on the purported inhumane treatment of animals in the Bureau's care. The Bureau acknowledged receipt of AWHC's request and provided a tracking number on the same day. Over the next several months, AWHC sent the Bureau five requests for an estimated date of completion. Hearing no response, AWHC filed suit eight months after filing its request. Three months later, prior to any action by this Court, the Bureau released 32 pages of responsive records. Six months after that, the Bureau supplemented its initial submission with two additional pages following an additional search.

AWHC now moves for attorney's fees and costs under FOIA's fees provision, which provides that "[t]he court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i). Because AWHC is neither eligible for nor entitled to fees and costs, the Court will deny its motion.

I. **Background**

AWHC is a nonprofit organization "committed to advocating for federally protected wild horses and burros." Pl.'s Fee Mot. 5. As part of that mission, AWHC seeks to "to expose abuse, fraud, and waste within federal programs affecting wild horses and burros." Id., Attachment 3 ("Perrin Decl.") ¶ 6. One such program is the Trainer Incentive Program ("TIP"), which was "created by the Mustang Heritage Foundation ("MHF"), in partnership with the BLM, with the purpose of training and finding homes for wild horses and burros." Perrin Decl. ¶ 38. AWHC has been investigating the alleged abuse of wild horses and burros by TIP trainers, including the export of animals for slaughter. Id. ¶¶ 38–39. Through records released in response to prior FOIA requests, AWHC claims to have discovered that animals in the Bureau's care "routine[ly]" end up in the slaughter pipeline. Id. ¶ 40. At the conclusion of its investigation, AWHC sent a report to the Bureau and MHF presenting "evidence related to two TIP trainers' inhumane treatment and neglect of TIP animals in their care, as well as the trainers selling horses to slaughter." Id. ¶ 41. The report urged the Bureau to investigate and correct the alleged abuses. Id.

AWHC was not satisfied with the Bureau's response, which it says "did not acknowledge the issues identified in the report." Id. ¶ 42. So, AWHC decided to "find out how the report was handled by the agency." Id.

To that end, on February 10, 2022, AWHC filed a FOIA request with the Bureau seeking communication records concerning the subject TIP trainers between Bureau employees and the MHF. Compl., Ex. 1 at 1–2; see Opp'n, Ex. A ("Witt Decl.") ¶ 5. AWHC requested records beginning January 1, 2021, through the processing date of the request. Id. The Bureau promptly

confirmed receipt and assigned the request a tracking number.[1]  Perrin Decl. ¶ 17; Compl., Ex. 3 at 1.  Two weeks later, AWHC narrowed the scope of the request to cover only "emails, including attachments" from January 1, 2021 through January 1, 2022.  Perrin Decl. ¶¶ 12–14; Compl., Ex. 2 at 1; Witt Decl. ¶ 7.  AWHC never received confirmation of its narrowed request.  Perrin Decl. ¶ 18; see Witt Decl. ¶ 8.

Over the next seven months, AWHC sent five emails to the Bureau requesting an estimated completion date.  Perrin Decl. ¶ 19.  The Bureau did not respond.  Id.  While the Bureau's online FOIA portal listed "an estimated completion date of '7/1/2022,'" that date "came and went without further response from [the Bureau]."  Id. ¶¶ 20–21.  After a total of approximately eight months without a response, AWHC filed the present action in October 2022.  Id. ¶ 28, 31.  In January 2023, the Bureau released 32 pages of responsive records.  Id. ¶ 34; Witt Decl. ¶ 9; Opp'n, Ex. B ("McGuire Decl.") ¶ 6.  Six months later, after conducting an additional search, the Bureau produced one supplemental responsive email.  Perrin Decl. ¶ 36; Witt Decl. ¶ 10.

AWHC now seeks attorney's fees and costs.  AWHC initially sought $33,725.19, Pl.'s Fee Mot. 25–26, and then increased its ask to $52,889.69, Pl.'s Reply 2.  For the reasons that follow, the Court will deny AWHC's motion.

**II.    Legal Standard**

Courts "may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred" in any FOIA case where "the complainant has substantially

---

[1] AWHC claims it received a confirmation email with a tracking number on March 14, 2022.  Perrin Decl. ¶ 17.  The Bureau maintains that it "acknowledged Plaintiff's FOIA request on February 10, 2022."  Witt Decl. ¶ 6.  The email attached as Exhibit 3 to AWHC's complaint is dated February 10, 2022 with a forwarding date of March 14, 2022.  Compl., Ex. 3 at 1.  The Court will therefore treat the February date as date of confirmation.

prevailed." 5 U.S.C. § 552(a)(4)(E)(i).  To recover fees and costs, a FOIA plaintiff must be both (1) eligible for and (2) entitled to such an award.  See Brayton v. Off. of the U.S. Trade Representative, 641 F.3d 521, 524 (D.C. Cir. 2011).  Even if a complainant successfully receives documents, "[t]here is no presumption in favor of awarding fees" and "the court has 'broad discretion' when considering whether to grant an award of attorney's fees." Env't Integrity Project v. EPA, 316 F. Supp. 3d 320, 325 (D.D.C. 2018) (citing Hall & Assocs. v. EPA, 210 F. Supp. 3d 13, 19 (D.D.C. 2016)).

A FOIA plaintiff is eligible for fees if it "substantially prevailed."  5 U.S.C. § 552(a)(4)(E)(i).  A plaintiff substantially prevails either by obtaining relief through a judicial order or by showing that its suit caused "a voluntary or unilateral change in position by the agency," resulting in the release of documents. 5 U.S.C. § 552(a)(4)(E)(ii); see Grand Canyon Tr. v. Bernhardt, ("Grand Canyon I"), 947 F.3d 94, 95 (D.C. Cir. 2020) (per curiam).

If the plaintiff is eligible for a fee award, the court proceeds to the entitlement inquiry. Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec. ("EPIC II"), 999 F. Supp. 2d 61, 66 (D.D.C. 2013) (quoting Brayton, 641 F.3d at 524).  Courts consider four factors to decide whether a plaintiff is entitled to fees: "(1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) the reasonableness of the agency's withholding of the requested documents." Kwoka v. IRS, 989 F.3d 1058, 1063 (D.C. Cir. 2021) (citation omitted).  "In applying this test, '[n]o one factor is dispositive.'" EPIC II, 999 F. Supp. 2d at 66 (alteration in original) (quoting Davy v. CIA, 550 F.3d 1155, 1159 (D.C. Cir. 2008)).  The balancing of these factors is left to the discretion of the district court. Morley v. CIA, 894 F.3d 389, 391 (D.C. Cir. 2018) (per curiam).

**III.     Analysis**

   A. Eligibility

A plaintiff is eligible for fees if it obtains relief through a judicial order or if it demonstrates that its suit caused "a voluntary or unilateral change in position by the agency," resulting in the release of documents. 5 U.S.C. § 552(a)(4)(E)(ii); see Grand Canyon I, 947 F.3d at 95.  Here, the Court never ordered relief to AWHC.  So AWHC seeks to demonstrate eligibility based on the "catalyst theory," which considers whether the lawsuit "caused a change in the agency's position regarding the production of requested documents." Grand Canyon I, 947 F.3d at 98.  The Court concludes that AWHC has not met its burden to show that "it is more probable than not that the government would not have" released the requested documents "absent the lawsuit." Id. at 97 (citation omitted).

AWHC relies on only two pieces of evidence to establish that its lawsuit caused the Bureau to release the requested documents:  (1) the delay between AWHC's request and the Bureau's release of documents; and (2) the Bureau's failure to communicate with AWHC during that period.  Neither can overcome the Bureau's representations that it "generally processes FOIA requests in the order they are received," "intended to process [AWHC]'s FOIA request" in that order, and never denied AWHC's request.  Witt Decl. ¶¶ 14–16.  The Court must presume those representations "were made in good faith." Zynovieva v. U.S. Dep't of State, No. 19-CV-3445, 2023 WL 2755599, at *5 (D.D.C. Mar. 31, 2023), aff'd, No. 23-5120, 2024 WL 1946592 (D.C. Cir. Apr. 30, 2024).  The Court thus has "good reason to believe" that the Bureau would have released the records in question when it finished processing AWHC's request, even if AWHC had never filed suit. Id.

True, a significant delay by an agency in complying with FOIA "may provide the 'inference that the agency forgot about, or sought to ignore, a FOIA requester's request.'" Elec. Priv. Info. Ctr. v. U.S. Dep't of Homeland Sec. ("EPIC III"), 218 F. Supp. 3d 27, 41 (D.D.C. 2016) (citation omitted). And the Bureau's delay in processing AWHC's request was considerable. AWHC filed its request on February 10, 2022. Compl., Ex. 1 at 1–2; see Witt Decl. ¶ 5. The Bureau did not release the first set of records until January 27, 2023—351 days later. Witt Decl. ¶ 9. That is significantly longer than the timeline dictated by FOIA. 5 U.S.C. § 552(a)(6)(A)(i); see Pl.'s Fee Mot. 14.

But "some amount of delay in excess of the statutory limit is, regrettably, a common feature of the FOIA process." Zynovieva, 2023 WL 2755599, at *6. And the Bureau represents that the "request remained in [the Bureau's] processing queue for several months" "[d]ue to [the Bureau's] extensive FOIA backlog." Witt Decl. ¶ 8. The Bureau further indicates that its backlog has been extensive over the past years. Id. ¶ 11. At the end of 2022, the year AWHC made its request, the Bureau had 1,427 backlogged requests.[2] Id. A processing period of just under a year does not strike the Court as out of the ordinary given this large backlog. The mere fact of the delay is thus consistent with the Bureau's explanation for it, and AWHC has not provided other evidence sufficient to counter the Bureau's presumptively good-faith representations.

Nor was there a "sudden acceleration" in the Bureau's processing after AWHC filed suit that might "lead a court to conclude that . . . the filing of the lawsuit was the real reason for that acceleration." Terris, Pravlik & Millian, LLP v. Centers for Medicare & Medicaid Servs., 794 F.

---

[2] If the next year's statistics are any indication, AWHC and its members may very well have contributed to some of that backlog, having lodged 75 of the FOIA requests pending before the Bureau's headquarters office in November 2023. Witt Decl. ¶ 12.

Supp. 2d 29, 38 (D.D.C. 2011).  The Bureau did not release the requested records until three months after AWHC filed suit.  Perrin Decl. ¶¶ 31, 34.  It therefore "seems more likely, in fact, that the documents would have been processed in the same manner, with the same result, regardless of whether litigation was filed."  Zynovieva, 2023 WL 2755599, at *6 (quoting WP Co. LLC v. U.S. Dep't of State, 506 F. Supp. 3d 11, 17 (D.D.C. 2020)).

AWHC also relies on the Bureau's failure to communicate about the status of the request while it was pending.  As noted, the Bureau did not respond to AWHC's five requests for an estimated completion date or communicate at all beyond its initial acknowledgment of the request until AWHC brought this lawsuit eight months later.  Perrin Decl. ¶¶ 24–25.  The Court agrees that the Bureau should have done more to apprise AWHC of the status of its request and explain the reason for the delay.  Indeed, in other cases concluding that a plaintiff is ineligible for fees, "the agencies typically provided more explanation for the delay" than the Bureau did here.  Zynovieva, 2023 WL 2755599, at *6; see, e.g., WP Company LLC, 506 F. Supp. 3d at 16–17.  But the Bureau's failure to communicate, while regrettable, does not alone overcome its assurances that it intended to process AWHC's request in the order received and experienced delays due to backlog.  Witt Decl. ¶¶ 8, 14–16.  At the eligibility stage, "it is [AWHC's] burden to show that it is more likely than not that [its] litigation caused the release of documents, not [the Bureau's] burden to prove otherwise."  Zynovieva, 2023 WL 2755599, at *7.  AWHC has not met that burden here.[3]

---

[3] AWHC also points to the Bureau's release of an additional responsive record "after further dialogue between the parties" and a supplemental search as support for its catalyst theory.  Perrin Decl. ¶ 35; Pl.'s Reply 6.  But as the Bureau notes, AWHC likely could have obtained the additional document through an ordinary administrative channel absent litigation, such as an agency appeal.  Opp'n 3.

B. <u>Entitlement</u>

Even if AWHC were eligible for fees and costs, the Court would find that it is not entitled to them. A FOIA litigant's entitlement to fees is governed by "four rather amorphous factors: (i) the public benefit from the case; (ii) the commercial benefit to the plaintiff; (iii) the nature of the plaintiff's interest in the records; and (iv) the reasonableness of the agency's withholding of the requested documents." <u>Morley</u>, 894 F.3d at 391.

The first factor asks whether "the complainant's victory is likely to add to the fund of information that citizens may use in making vital political choices." <u>Cotton v. Heyman</u>, 63 F.3d 1115, 1120 (D.C. Cir. 1995). The Court cannot discern any public benefit to the documents AWHC obtained through its FOIA request. The only document AWHC received that was not already in its possession appears to be an email from one Bureau staff member to a TIP manager and MHF director "requesting that they call me to discuss the report and coordinate a response." McGuire Decl. ¶ 9. The remainder of the records obtained by Plaintiff include its own publicly available report, the Bureau's response to the report (which Plaintiff already had), and a copy of that response forwarded to Bureau staff and legal counsel. <u>Id.</u> ¶¶ 7–15; <u>see id.</u> ¶ 16 (detailing that the produced emails discussed the "receipt of" and "response to the report"). Notably, the released records did not shed any additional light on AWHC's allegations of animal mistreatment. <u>Id.</u> (indicating that the records did not "reveal anything about the underlying allegations contained in Plaintiff's report" or the Bureau's investigation). The Court thus concludes that the largely administrative emails AWHC received do not "benefit[] the public by increasing its knowledge of its government." <u>Cotton</u>, 63 F.3d at 1120.

"The second and third entitlement factors, considered together, address whether the plaintiff had a 'sufficient private incentive' to pursue his FOIA request even without the prospect

8

of obtaining attorneys' fees." McKinley v. Fed. Hous. Fin. Agency, 739 F.3d 707, 712 (D.C. Cir. 2014) (citation omitted). AWHC is a non-profit organization that does not benefit commercially from obtaining the records in question, so these factors favor it. See Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec. ("EPIC I"), 811 F. Supp. 2d 216, 235 (D.D.C. 2011) (explaining that "[f]ee recovery is often appropriate [] when the plaintiff is a nonprofit public interest group"). The Bureau does not argue otherwise. See Opp'n 12.

Lastly, the test for reasonableness requires consideration of (1) the appearance of a reasonable basis under law *and* (2) whether the agency was recalcitrant or obdurate. McKinley, 739 F.3d at 712. As just explained, AWHC has given the Court no reason to doubt the Bureau's explanation for its delay in releasing the requested records. See Witt Decl. ¶ 8. Even if the Bureau's backlog of requests does not go so far as to supply a reasonable basis for withholding the records, the Bureau's representations certainly do not reflect recalcitrance or obduracy. The fourth factor weighs in favor of the Bureau.

The Court concludes that the balance of the factors weighs against AWHC. Although AWHC instituted the litigation to serve the public, the documents it obtained provided no public benefit and the Bureau has, at most, "acted more slowly than it should have." Zynovieva, 2023 WL 2755599, at *8. Accordingly, even if the Court had found that AWHC was eligible for fees and costs, it would decline to award them.

## IV. Conclusion

For these reasons, it is hereby

**ORDERED** that [Dkt. No. 16] Plaintiff's Motion for Attorney's Fees and Costs is DENIED.

**SO ORDERED**.

9

This is a final appealable Order.

                                                                           CHRISTOPHER R. COOPER
                                                                           United States District Judge

Date: August 26, 2024